Exhibit 1



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

STEVEN HAM

_____
                                    Plaintiff

vs.                                                    Case Number _____

ABDURRAHMAN HUSSEIN                        14 - 0 0 0 4 4 0 9

_____
                                   Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Eric Menhart, Esq.
_____
Name of Plaintiff's Attorney

        10 G St NE Suite 710
_____
Address
        Washington, DC 20002

        855-453-9376
_____
Telephone

Clerk of the Court

By _____
                                      Deputy Clerk

Date  7/17/14

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ።

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
                                    Demandante

contra

_____        Número de Caso: _____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                    _SECRETARIO DEL TRIBUNAL_

Nombre del abogado del Demandante
_____

Dirección                           Por: _____
_____            Subsecretario

Teléfono
_____     Fecha _____
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction   Để có một bản dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화하십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

                                                                    CASUM.doc



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

STEVEN HAM
    Vs.                               C.A. No.      2014 CA 004409 B
ABDURRAHMAN HUSSEIN et al

### INITIAL ORDER AND ADDENDUM

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order.  As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

    (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.   Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                                 Chief Judge Lee F. Satterfield

Case Assigned to: Judge ROBERT D OKUN
Date:  July 17, 2014
Initial Conference: 9:30 am, Friday, October 17, 2014
Location:  Courtroom 317
          500 Indiana Avenue N.W.
          WASHINGTON, DC  20001                                Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

RECEIVED
Civil Clerk's Office
JUL 17 2014
Superior Court of the
District of Columbia
Washington, D.C.

STEVEN HAM
616 E St NW Apt 918
Washington, DC 20004

v.

ABDURRAHMAN HUSSEIN
100 Kentland Dr.
Great Falls, VA 22066

and

RAINMAKER TECHNOLOGIES, INC.
11911 Freedom Drive, Suite 850
Reston, VA 20190

Case No.

Jury Trial Demand

## COMPLAINT

Plaintiff Steven Ham[1] ("Ham"), through undersigned counsel, hereby files his Complaint against Defendants Abdurrahman Hussein ("Hussein") and Rainmaker Technologies, Inc. ("RTI"), and states as follows:

### INTRODUCTION

1.      Plaintiff Ham brings this complaint against the named Defendants for unjust enrichment, breach of implied contract, intentional interference with prospective advantage, fraud and related claims.

2.      Plaintiff and Defendants formed a partnership in January of 2013. The partnership was based on a business model that "pulled forward" the future savings or monetization of expenses for third-party businesses.

---

[1] Plaintiff's last name is pronounced like "hahm."

3.     Defendants worked closely with Plaintiff for over sixteen months on the jointly-designed and operated business. Plaintiff invested substantial time, money and resources into the business.

4.     Defendants accepted Plaintiff's work-product on a near daily basis, and the parties communicated almost daily. Plaintiff routinely referred to Hussein as "partner." Ham also held the position of "Managing Partner" at RTI.

5.     The business had demonstrated successes, including several deals with prominent business partners.

6.     In April of 2014, Hussein notified Plaintiff that he was unwilling to commute to meet with Plaintiff, and began avoiding phone calls, text messages and emails from Plaintiff.

7.     Later, Hussein, who maintained control over the email and domain name of the company, locked Plaintiff out of his email account on or about June 11, 2014. Hussein also ceased all communication with Plaintiff.

8.     Despite locking Plaintiff out of his email account and ceasing communications Hussein continues to actively running the business. Hussein is communicating with clients, undertaking negotiations and aggressively employing Plaintiff's work product in the ongoing operation of the business.

9.     Plaintiff's hope to continue to work within the partnership is no longer possible given Hussein's actions. Moreover, Defendants have benefited and continue to benefit from the fruits of Ham's labor, despite having paid no compensation to Plaintiff. This Complaint now seeks appropriate compensation for Defendants' unlawful actions.

2

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this Complaint pursuant to D.C. Code § 11-921(a)(6).

11.     Each of the Defendants are subject to jurisdiction in this Court pursuant to D.C. Code § 13-423(a)(1) because the Defendants transact business in the District of Columbia.[2]

12.     Defendants are subject to jurisdiction in this Court pursuant to D.C. Code § 13-423(a)(2) because they contract to supply services in the District of Columbia.

13.     Each of the Defendants are subject to jurisdiction in this Court pursuant to D.C. Code § 13-423(a)(3) because they caused tortuous injury in the District of Columbia by an act or omission in the District of Columbia. Specifically, each Defendant directed tortious injury at Ham, who is a resident of Washington, DC.

14.     Venue is appropriate in this court because the Plaintiff is a resident of Washington, D.C. and both of the Defendants are subject to personal jurisdiction in Washington, DC.

15.     Venue is also appropriate in this court because many of the acts and omissions described in this Complaint occurred within Washington, DC.

## PARTIES

16.     Plaintiff Steven Ham is an adult citizen residing in Washington D.C. Mr. Ham is a business person with substantial experience in private equity, venture capital, and business strategy.

17.     Defendant Hussein is an adult citizen residing in Virginia. Hussein is a successful business person with a sophisticated understanding of start-ups, advanced business models, and

---

[2] Plaintiff and Defendants worked and met with clients in several different locations, including Northern Virginia and Washington, DC. For example, on December 9, 2012, Hussein told Ham in a text message "I can meet you in DC today - I think there's too much work to do to save all for tomorrow." On April 22, 2014, the parties were working at an office located at 1200 G St NW, in Washington, DC. Defendant Hussein also notes in a text message of April 1, 2014 that he "would like to be in meeting with [redacted] in DC - I'm not ok with not being in it." In a text message on January 6, 2014 Hussein states "Should I mention meeting him in DC for coffee?"

3

joint ventures. For example, in one prior venture, Hussein realized "a 16X MOIC (300% IRR) in [his] investment in the company within two years. [He] was able to personally secure 10% of US hospital industry in two years without an in-house sales department – [the business] had 550 hospital clients - 85,000 acute care beds."[3]

18.     Defendant RTI is a Delaware corporation with its principal place of business in Reston, Virginia. RTI was formed on February 25, 2013. RTI was independently formed by Hussein. On information and belief, Hussein is the only shareholder at the time of this filing.

## FACTUAL BACKGROUND

19.     Plaintiff met Defendant Hussein in December, 2012. Defendant Hussein was selling his business and needed strategic advice, projection and presentation for a board meeting. Plaintiff temporarily provided his services as a consultant.

20.     In January of 2013, Plaintiff and Defendants discussed a possible partnership between the individuals, with each partner holding 50% equity of the value created as a result of the partnership ("Partnership").

21.     The Partnership was based on a unique business model that "pulled forward" future savings or monetization of expenses. The Partnership would create two business lines under the RTI umbrella: (i) expense monetization consulting business and (ii) private equity business.

22.     The business model developed by the Partnership required high-level financial understanding of the private equity industry, an issue on which Plaintiff has substantial experience and expertise. Defendants had no experience in finance and private equity, and relied upon Plaintiff for most, if not all, of the finance and private equity work undertaken by the Partnership.

---

[3] See Abdul Hussein, available at https://www.linkedin.com/pub/abdul-hussein/98/961/521 (last visited July 16, 2014).

23.     Despite reaching an agreement, the parties had no written agreement setting forth their rights and responsibilities. However, Hussein orally represented to Plaintiff that he would be a "partner" in the venture, and that Plaintiff would be entitled to 50% of the stock of any corporate entity created for the purposes of developing the business opportunities created by the partnership.

24.     Ham and Hussein began working in earnest in January of 2013. The parties communicated almost daily, via phone calls, emails, text messages and in-person meetings.

25.     In January 2013, Ham began drafting the business model serving as the basis for the partnership. Ham prepared both a consulting model and a private equity model, and kept Hussein abreast of his undertakings. Hussein regularly communicated with Ham during this time.

26.     Ham and Hussein met and communicated routinely, both with one another and with potential clients, throughout the early months of 2013. Among other things, Ham created and executed non-disclosure agreements with the vast majority of partners and clients, arranged meetings, and undertook to explain the benefits of the Partnership business model to potential clients.

27.     The parties routinely communicated via text message. On June 25, 2013, Hussein wrote to Ham "congratulations - first hospital NDA & data." Ham replied back "Congrats to you as we'll. well done partner." Hussein made no objection to Ham's referring to him as "partner."

28.     On July 11, 2013, Ham wrote: "Take care of what you need to I got this taken care of call me when you have sometime later today." Hussein replied "I appreciate this, pray for me." Ham replied: "Of course partner. Will brief you when u have time." Again, Hussein made no objection to Ham's referring to Hussein as "partner."

29.     Ham continued to work diligently on the Partnership, creating all work products, attending meetings, building networks of business contacts and executing agreements on behalf of RTI. For example, in July of 2013, Ham was the signatory for "Rainmaker" in a contract with "AEC."[4]

30.     On October 17, 2013, Ham was the signatory on a document entitled "Commercial and Industrial Customer Servicing and Acquisition Program."

31.     On November 19, 2013, Ham was the signatory on a "Confidentiality and Non-Circumvent Agreement" on behalf of RTI. Of particular note, Ham's title on the document was "Managing Partner." Hussein was aware of Ham's title and all actions related to the document and transaction.

32.     On November 24, 2013, Ham was the signatory on a "Confidentiality Agreement." Again, Ham's title on the document was "Managing Partner." Hussein was aware of Ham's title and all actions related to the document and transaction.

33.     On November 25, 2013, Ham was again the signatory on a "Confidentiality Agreement." Yet again, Ham's title on the document was "Managing Partner." Again, Hussein was aware of Ham's title and all actions related to the document and transaction.

34.     On January 27, 2014, Ham signed a "Cooperation Agreement" for the benefit of RTI. Again, Ham's title on the document was "Managing Partner."[5]

35.     In addition to the documents referring to Ham as "Partner," some of the business proposals undertaken by the Partnership expressly note that Ham is due an equity position in businesses. For example, on October 8, 2013, Ham sent Hussein a proposal to be sent to a third

---

[4] Plaintiff refers to certain documents using acronyms for purposes of identifying the document, but maintaining the confidentiality of the parties and the terms of the documents.
[5] On information and belief, there are numerous other documents under Defendants' control that will demonstrate Ham's expertise, work product, authority and partner status in the business.

party. The proposal expressed that "Rainmaker (Steve & Abdul)" would be due 50% of a portfolio. Moreover, Ham and Hussein were both due one-third equity in a PE fund, along with another third party.

36.     While Ham routinely executed documents for the benefit of the company, he also undertook to benefit the business in numerous other ways, such as handling negotiations on phone calls, explaining the value proposition of the business model, and more. Hussein regularly complimented Ham's work product. For example, on August 5, 2013, Hussein stated via text message on August 5, 2013, "very good job on this call."

37.     On September 19, 2013, in response to a text message from Ham about a business connection Ham had created, Hussein stated "great job man."

38.     On December 6, 2013, Hussein states via text message addressed to Ham: "Good, thanks for sending - I think that you can tell [redacted] that yes it is an aggressive proposal but it's not every day that there is somebody that has delivered such significant results as you and it's not every day that there is a phenomenal new invention in the entire private equity model and we are asking for a little bit more but only if we can achieve at much higher multiple then is normal." The message reflects Hussein's belief that Ham had "delivered significant results" and that Ham's work-product and ideas created opportunities for business value in excess of that typically expected in the industry. Later, on the same day, Hussein reiterates to Ham via text message: "good job man."

39.     Hussein regularly relied upon Ham's business acumen and experience. In one situation, after Ham had made an adjustment to a third-party business proposal, Hussein stated via text message "I trust your gut feeling this." Later, Hussein reiterated his viewpoint, stating "Again I trust you on this so if you really think it is so - then good."

40.     Later, on January 9, 2014 Hussein states via text message to Ham, "Lets do good with the money we make. Thank you Steve for you closing abilities with [redacted] - Mad Respect !!!!"

41.     On the same day, Hussein states "Excellent - I will call soon but some wording change on pre-approval rights and need change on Abdul & Steve compensation section - very excellent - we could also add a bonus that Abdul & Steve can begin to work sooner to source platforms." Again, Hussein recognized that Ham was entitled to equal compensation under the Partnership.

42.     On January 10, 2014 Hussein again compliments the Plaintiff, stating emphatically via text message: "Good nite and heroic job." Later, on January 20, 2014 Hussein again compliments Plaintiff, stating: "good call , complex but good brain work."

43.     On February 5, 2014, Hussein again notes his belief that he and Ham are operating within a partnership, stating via text message that "I will mention that we were looking at at least a 1 million Dollar valuation for partnership by and with regards to [redacted] coming in for the expense monetizes and strictly just on healthcare side."

44.     In April of 2014, Hussein notified Plaintiff that he was unwilling to commute to meet with Plaintiff, and began avoiding phone calls, text messages and emails from Plaintiff.

45.     Plaintiff, concerned about the possible loss of overall value in the partnership, implored Hussein to hold up his end of the partnership and perform his portion of the work. The parties were able to resolve their differences for a short time.

46.     Shortly thereafter, Hussein, who maintained control over the email and domain name of the company, locked Plaintiff out of his email account on or about June 11, 2014. Hussein also ceased all communication with Plaintiff.

47. Despite locking Plaintiff out of his email account, Hussein is actively communicating

with clients and taking negotiations and enjoying the fruits of Ham's labor without any compensation to Plaintiff. For example, on Monday, June 16, 2014, Hussein sent a "Cooperation Agreement" document to a client contact that Ham had drafted, removing Ham's name on the document and replacing Ham's name with his own.

48.     Despite Hussein's aggressive actions, Plaintiff made numerous efforts to contact Hussein to resolve the matter. When Hussein did not respond, Plaintiff contacted undersigned.

49.     Undersigned sent notice of the possibility of the present lawsuit to Hussein, personally, and the registered agent for RTI. Again, Defendants did not respond. Given no other recourse, this action follows.

## CAUSES OF ACTION

Plaintiff seeks redress as a result of Defendants' actions, as follows:

### Count One: Unjust Enrichment

50.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

51.     In the District of Columbia, unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.[6]

52.     Plaintiff Ham invested money and countless hours of his time in meetings, drafting documents, business planning, and other work for the benefit of the Defendants.

53.     Defendants retained all benefits of Plaintiff's work, including work product produced by Plaintiff and trade secrets employed for the benefit of the business. Moreover, Defendants

---

[6] News World Communs., Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005)

continue to attempt to employ Plaintiff's work product to create profits, which are being held unlawfully by Defendants.

54.     Given that Ham's money, time, efforts, intellectual property, work product and business connections have been and are currently being employed without compensation, Defendants' retention of the benefit is unjust.

55.     Wherefore, Plaintiff seeks damages and injunctive relief.

### Count Two: Quantum Meruit

56.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

57.     In the District of Columbia, a party asserting a quantum meruit[7] claim must demonstrate that the parties' conduct implied the existence of a contractual relationship by establishing: (1) valuable services rendered by the plaintiff, (2) for the person for whom recovery is sought; (3) which services were accepted and enjoyed by that person, and (4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid.[8]

58.     In the present matter, Plaintiff Ham provided countless hours of time and substantial expertise for the benefit of the Defendants.

59.     Defendants Hussein and RTI were the beneficiaries of Plaintiff's valuable services.

60.     Hussein and RTI have enjoyed, and continue to enjoy, the fruits of Plaintiff's labor and expertise, because they relied upon Plaintiff's work product in the operation of the business.

61.     Defendants were reasonably notified of Plaintiff's expectation of payment. Among other things, Plaintiff referred to Hussein as partner several times, without Hussein's objection.

---

[7] The District of Columbia recognizes separate quantum meruit and unjust enrichment causes of action. See e.g. United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co., 81 F.3d 240, 246-47, 317 U.S. App. D.C. 145 (D.C. Cir. 1996).
[8] Plesha v. Ferguson, 725 F. Supp. 2d 106, 111 (D.D.C. 2010)

Plaintiff was listed as "Managing Partner" on documents submitted to third parties, to which Hussein did not object. In many proposals, Plaintiff was named as an individual that would be entitled to equity, along with Hussein. Finally, Plaintiff communicated to Plaintiff, on numerous occasions, his expectation that his work would be compensated.

62.     Wherefore, Plaintiff seeks damages and injunctive relief.

### Count Three: Breach of Implied Contract

63.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

64.     In the District of Columbia, to establish the existence of an implied contract, a plaintiff must show four elements: (1) valuable services being rendered; (2) for the person sought to be charged; (3) which services were accepted by the person sought to be charged·. . . ; (4) under such circumstances as reasonably notified the person sought to be charged that [the person rendering the services] expected to be paid by him or her.[9]

65.     In the present matter, Plaintiff provided valuable services to Defendants by investing his money, time and providing expertise for the benefit of Defendants.

66.     Defendants were, and continue to be, beneficiaries of the valuable services.

67.     Defendants fully utilized the services provided by Plaintiff, demonstrated by numerous communications between the parties, documents exchanged, and other proof of acceptance.

68.     Defendants were reasonably notified of Plaintiff's expectation of payment. Among other things, Plaintiff referred to Hussein as partner several times, without Hussein's objection. Plaintiff was listed as "Managing Partner" on documents submitted to third parties, to which Hussein did not object. In many proposals, Plaintiff was named as an individual that would be

---

[9] Vereen v. Clayborne, 623 A.2d 1190, 1193 (D.C. 1993)

entitled to equity, along with Hussein. Finally, Plaintiff communicated to Plaintiff, on numerous occasions, his expectation that his work would be compensated.

69.   Wherefore, Plaintiff seeks damages and injunctive relief.

### Count Four: Intentional Interference with Prospective Advantage

70.   Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

71.   In the District of Columbia, this tort has four elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage.[10]

72.   In the present matter, there was an existing business relationship between Plaintiff, Hussein and RTI. The parties were all working together for the common goal of the profitability of the business. Moreover, Plaintiff expected payment for the work undertaken in the Partnership.

73.   Hussein was in constant communication with Ham over a period of more than sixteen months and knew that Ham had an expectation of compensation for his investment of time, money and applicable expertise.

74.   In June of 2014, Hussein locked Ham out of the company email account, ceased communication with Plaintiff and continued to operate the business without compensating Ham.

75.   Ham has been damaged by Hussein's actions. First, Hussein is employing work product owned and provided by Ham without having compensated Ham for the same. Second, Ham is damaged because his reasonable expectation of payment has not come to fruition, and, on

---

[10] Browning v. Clinton, 352 U.S. App. D.C. 4, 292 F.3d 235, 242 (2002)

information and belief, Hussein will not pay any future revenues obtained as a result of Ham's valuable services.

76. Wherefore, Plaintiff seeks damages and injunctive relief.

### Count Five: Common Law Fraud

77. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

78. In the District of Columbia, the essential elements of common law fraud are: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation."[11]

79. Moreover, District of Columbia courts recognize that "a false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen."[12]

80. In the present matter, Defendant Hussein made numerous false representations. First, Hussein represented to Plaintiff that the undertaking between the parties was a business partnership. Second, Hussein represented that Plaintiff would be entitled to 50% of the stock in RTI. On information and belief, Hussein made other statements in a similar vein, currently contained in emails that are unavailable to Plaintiff, which will be set forth in a forthcoming Amended Complaint.

81. In the alternative, Hussein failed to disclose a material fact when he remained silent as to his intentions upon Plaintiff's referring to Hussein as "partner," Plaintiff's operating under the title of "Managing Partner" and Plaintiff's numerous statements reflecting his belief that he was operating in a partnership.

---

[11] See Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1074 n.22 (D.C. 2008) (citation omitted).
[12] See Rothenberg v. Aero Mayflower Transit Co., Inc., 495 F. Supp. 399 (D.D.C. 1980).

82. Hussein's statements were in reference to a material fact, namely, Plaintiff's compensation and financial expectations for his substantial investment of time and expertise.

83. Hussein knew that he was not going to compensate Ham for his time, and had knowledge that his statements were false. Alternatively, Hussein failed to disclose the material fact that he had no intention of allowing Ham to be compensated for his time.

84. Hussein made the statements with an intent to deceive Ham, so that Ham would continue to work on the business as long as possible. Alternatively, Hussein did not disclose the fact that he had no intention of paying Ham because he knew that Ham would no longer work on the project if Ham had no reasonable expectation of compensation.

85. Ham relied on Hussein's statements or failures to disclose a material fact. Ham continued to work with Defendants for a period of over sixteen months with a reasonable expectation of payment based on Hussein's false statements or failure to disclose material facts.

86. Wherefore, Plaintiff seeks damages and injunctive relief.

**Count Six: Negligent Misrepresentation**

87. Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

88. To prove negligent misrepresentation, a plaintiff must show "(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to his detriment."[13]

89. In the present matter, Defendant Hussein made numerous false representations. First, Hussein represented to Plaintiff that the undertaking between the parties was a business partnership. Second, Hussein represented that Plaintiff would be entitled to 50% of the stock in

[13] See Kumar v. D.C. Water & Sewer Auth., 25 A.3d 9, 15 n 10 (D.C. 2011)

14

RTI. On information and belief, Hussein made other statements in a similar vein, currently contained in emails that are unavailable to Plaintiff, which will be set forth in a forthcoming Amended Complaint.

90.    Hussein's statements were in reference to a material fact, namely, Plaintiff's compensation and financial expectations for his substantial investment of time and expertise.

91.    Ham relied on Hussein's statements or failures to disclose. Ham continued to work with Defendants for a period of over sixteen months with a reasonable expectation of payment based on Hussein's false statements or failure to disclose material facts. However, Plaintiff has received no compensation for his time or effort, to his detriment.

92.    Wherefore, Plaintiff seeks damages and injunctive relief.

## Count Seven: Fraudulent Misrepresentation

93.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

94.    In order to prove fraudulent misrepresentation in the District of Columbia, a plaintiff may show "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages."[14]

95.    In the present matter, Hussein made a false representation of a material fact, namely that Ham would be paid for his time and expertise. Alternatively, Defendant omitted the material fact.

96.    Hussein knew that he was not going to compensate Ham and Hussein made the statements with knowledge of their falsity.

---

[14] See Kumar, 25 A.3d 15 n 9 (D.C. 2011).

97.    Ham relied on Hussein's statements or failures to disclose. Ham continued to work with Defendants for a period of over sixteen months with a reasonable expectation of payment based on Hussein's false statements or failure to disclose material facts.

98.    Ham suffered damages, and is able to demonstrate the reasonable compensation he should have reasonably received given the time invested and work product produced.

99.    Wherefore, Plaintiff seeks damages and injunctive relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks the following relief:

1.    An award for damages, in an amount not less than $100,0000, in an amount to be proven at trial;

2.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct, and if their conduct is proven willful, award Plaintiff exemplary damages;

3.    Disgorgement or restitution by Defendants of all revenue earned from the fraudulent and unlawful practices described herein;

4.    An award of punitive damages, in an amount to be proven at trial;

5.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, including an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

6.    An award to Plaintiff of reasonable litigation expenses and attorneys' fees;

7.    An award to Plaintiff of pre-judgment and post-judgment interest, to the extent allowable; and

8.    Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury with respect to each claim in this Complaint.


Respectfully submitted,                                    Dated: July 17, 2014


Eric J. Menhart (Bar ID: 975896)
Lexero Law
10 G St NE Suite 710
Washington, D.C. 20002
Phone: 855-453-9376
Fax: 855-453-9376

17