IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN HAM <br><br> v. <br><br> ABDURRAHMAN HUSSEIN, ET AL. | Case No. 1:14-cv-01367-RC <br><br> Jury Trial Demand |

## **FIRST AMENDED COMPLAINT**

Plaintiff Steven Ham[1] ("Ham"), through undersigned counsel, hereby files his First

Amended Complaint[2] against Defendants Abdurrahman Hussein ("Hussein") and Rainmaker

Technologies, Inc. ("RTI"), and states as follows:

## **INTRODUCTION**

1.      Plaintiff Ham brings this complaint against the named Defendants for unjust

enrichment, breach of implied contract, intentional interference with prospective advantage,

fraud and related claims.

2.      Plaintiff and Defendants formed a partnership in January of 2013. The partnership

was based on a business model that "pulled forward" the future savings or monetization of

expenses for third-party businesses.

3.      Defendants worked closely with Plaintiff for over sixteen months on the jointly-

designed and operated business. Plaintiff invested substantial time, money and resources into the

business.

---

[1] Plaintiff's last name is pronounced like "hahm."
[2] Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff obtained "the opposing party's written consent" for this First
Amended Complaint via an October 16, 2014 email exchange between counsel.

4.      Defendants accepted Plaintiff's work-product on a near daily basis, and the parties communicated almost daily. Plaintiff routinely referred to Hussein as "partner." Ham also held the position of "Managing Partner" at RTI.

5.      The business had demonstrated successes, including several deals with prominent business partners.

6.      In April of 2014, Hussein notified Plaintiff that he was unwilling to commute to meet with Plaintiff, and began avoiding phone calls, text messages and emails from Plaintiff.

7.      Later, Hussein, who maintained control over the email and domain name of the company, locked Plaintiff out of his email account on or about June 11, 2014. Hussein also ceased all communication with Plaintiff.

8.      Despite locking Plaintiff out of his email account and ceasing communications Hussein continues to actively running the business. Hussein is communicating with clients, undertaking negotiations and aggressively employing Plaintiff's trade secrets and work product in the ongoing operation of the business.

9.      Plaintiff's hope to continue to work within the partnership is no longer possible given Hussein's actions. Moreover, Defendants have benefited and continue to benefit from the fruits of Ham's labor, despite having paid no compensation to Plaintiff. Mr. Ham now seeks appropriate compensation for Defendants' unlawful actions.

## JURISDICTION AND VENUE

10.      This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331 as an action that arises under the laws of the United States.

11.     Each of the Defendants are subject to personal jurisdiction in this Court pursuant to

D.C. Code § 13-423(a)(1) because the Defendants transact business in the District of Columbia.[3]

12.     Defendants are subject to jurisdiction in this Court pursuant to D.C. Code § 13-

423(a)(2) because they contract to supply services in the District of Columbia.

13.     Each of the Defendants are subject to jurisdiction in this Court pursuant to D.C. Code

§ 13-423(a)(3) because they caused tortuous injury in the District of Columbia by an act or

omission in the District of Columbia. Specifically, each Defendant directed tortious injury at

Ham, who is a resident of Washington, DC.

14.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because a

substantial part of the events giving rise to the claims occurred in the District of Columbia, and a

substantial part of the property that is the subject of the action is situated in the District. Venue is

also appropriate in this court because the Plaintiff is a resident of Washington, D.C. and both of

the Defendants are subject to personal jurisdiction in Washington, DC.

## PARTIES

15.     Plaintiff Steven Ham is an adult citizen residing in Washington D.C. Mr. Ham is a

business person with substantial experience in private equity, venture capital, and business

strategy.

16.     Defendant Hussein is an adult citizen residing in Virginia. Hussein is a successful

business person with a sophisticated understanding of start-ups, advanced business models, and

joint ventures. For example, in one prior venture, Hussein realized "a 16X MOIC (300% IRR) in

---

[3] Plaintiff and Defendants worked and met with clients in several different locations, including Northern Virginia and Washington, DC. For example, on December 9, 2012, Hussein told Ham in a text message "I can meet you in DC today - I think there's too much work to do to save all for tomorrow." On April 22, 2014, the parties were working at an office located at 1200 G St NW, in Washington, DC. Defendant Hussein also notes in a text message of April 1, 2014 that he "would like to be in meeting with [redacted] in DC - I'm not ok with not being in it." In a text message on January 6, 2014 Hussein states "Should I mention meeting him in DC for coffee?"

[his] investment in the company within two years. [He] was able to personally secure 10% of US hospital industry in two years without an in-house sales department – [the business] had 550 hospital clients - 85,000 acute care beds."[4]

17.     Defendant RTI is a Delaware corporation with its principal place of business in Reston, Virginia. RTI was formed on February 25, 2013. RTI was independently formed by Hussein. On information and belief, Hussein is the only shareholder at the time of this filing.

## FACTUAL BACKGROUND

18.     Plaintiff met Defendant Hussein in December, 2012. Defendant Hussein was selling his business and needed strategic advice, projection and presentation for a board meeting. Plaintiff temporarily provided his services as a consultant.

19.     In January of 2013, Plaintiff and Defendants discussed a possible partnership between the individuals, with each partner holding 50% equity of the value created as a result of the partnership ("Partnership").

20.     The Partnership was based on a unique business model that "pulled forward" future savings or monetization of expenses. The Partnership would create two business lines under the RTI umbrella: (i) expense monetization consulting business and (ii) private equity business.

21.     The business model developed by the Partnership required high-level financial understanding of the private equity industry, an issue on which Plaintiff has substantial experience and expertise. Defendants had no experience in finance and private equity, and relied upon Plaintiff for most, if not all, of the finance and private equity work undertaken by the Partnership.

---

[4] See Abdul Hussein, available at https://www.linkedin.com/pub/abdul-hussein/98/961/521 (last visited July 16, 2014).

22.     Despite reaching an agreement, the parties had no written agreement setting forth their rights and responsibilities. However, Hussein orally represented to Plaintiff that he would be a "partner" in the venture, and that Plaintiff would be entitled to 50% of the stock of any corporate entity created for the purposes of developing the business opportunities created by the partnership.

23.     Ham and Hussein began working in earnest in January of 2013. The parties communicated almost daily, via phone calls, emails, text messages and in-person meetings.

24.     In January 2013, Ham began drafting the business model serving as the basis for the partnership. Ham prepared both a consulting model and a private equity model, and kept Hussein abreast of his undertakings. Hussein regularly communicated with Ham during this time.

25.     Ham and Hussein met and communicated routinely, both with one another and with potential clients, throughout the early months of 2013. Among other things, Ham created and executed non-disclosure agreements with the vast majority of partners and clients, arranged meetings, and undertook to explain the benefits of the Partnership business model to potential clients.

26.     The parties routinely communicated via text message. On June 25, 2013, Hussein wrote to Ham "congratulations - first hospital NDA & data." Ham replied back "Congrats to you as we'll. well done partner." Hussein made no objection to Ham's referring to him as "partner."

27.     On July 11, 2013, Ham wrote: "Take care of what you need to I got this taken care of call me when you have sometime later today." Hussein replied "I appreciate this, pray for me." Ham replied: "Of course partner. Will brief you when u have time." Again, Hussein made no objection to Ham's referring to Hussein as "partner."

28.     Ham continued to work diligently on the Partnership, creating all work products, attending meetings, building networks of business contacts and executing agreements on behalf of RTI. For example, in July of 2013, Ham was the signatory for "Rainmaker" in a contract with "AEC."[5]

29.     On October 17, 2013, Ham was the signatory on a document entitled "Commercial and Industrial Customer Servicing and Acquisition Program."

30.     On November 19, 2013, Ham was the signatory on a "Confidentiality and Non-Circumvent Agreement" on behalf of RTI. Of particular note, Ham's title on the document was "Managing Partner." Hussein was aware of Ham's title and all actions related to the document and transaction.

31.     On November 24, 2013, Ham was the signatory on a "Confidentiality Agreement." Again, Ham's title on the document was "Managing Partner." Hussein was aware of Ham's title and all actions related to the document and transaction.

32.     On November 25, 2013, Ham was again the signatory on a "Confidentiality Agreement." Yet again, Ham's title on the document was "Managing Partner." Again, Hussein was aware of Ham's title and all actions related to the document and transaction.

33.     On January 27, 2014, Ham signed a "Cooperation Agreement" for the benefit of RTI. Again, Ham's title on the document was "Managing Partner."[6]

34.     In addition to the documents referring to Ham as "Partner," some of the business proposals undertaken by the Partnership expressly note that Ham is due an equity position in businesses. For example, on October 8, 2013, Ham sent Hussein a proposal to be sent to a third

---

[5] Plaintiff refers to certain documents using acronyms for purposes of identifying the document, but maintaining the confidentiality of the parties and the terms of the documents.
[6] On information and belief, there are numerous other documents under Defendants' control that will demonstrate Ham's expertise, work product, authority and partner status in the business.

party. The proposal expressed that "Rainmaker (Steve & Abdul)" would be due 50% of a portfolio. Moreover, Ham and Hussein were both due one-third equity in a PE fund, along with another third party.

35.     While Ham routinely executed documents for the benefit of the company, he also undertook to benefit the business in numerous other ways, such as handling negotiations on phone calls, explaining the value proposition of the business model, and more. Hussein regularly complimented Ham's work product. For example, on August 5, 2013, Hussein stated via text message on August 5, 2013, "very good job on this call."

36.     On September 19, 2013, in response to a text message from Ham about a business connection Ham had created, Hussein stated "great job man."

37.     On December 6, 2013, Hussein states via text message addressed to Ham: "Good, thanks for sending - I think that you can tell [redacted] that yes it is an aggressive proposal but it's not every day that there is somebody that has delivered such significant results as you and it's not every day that there is a phenomenal new invention in the entire private equity model and we are asking for a little bit more but only if we can achieve at much higher multiple then is normal." The message reflects Hussein's belief that Ham had "delivered significant results" and that Ham's work-product and ideas created opportunities for business value in excess of that typically expected in the industry. Later, on the same day, Hussein reiterates to Ham via text message: "good job man."

38.     Hussein regularly relied upon Ham's business acumen and experience. In one situation, after Ham had made an adjustment to a third-party business proposal, Hussein stated via text message "I trust your gut feeling this." Later, Hussein reiterated his viewpoint, stating "Again I trust you on this so if you really think it is so - then good."

39.     Later, on January 9, 2014 Hussein states via text message to Ham, "Lets do good with the money we make. Thank you Steve for you closing abilities with [redacted] - Mad Respect !!!!"

40.     On the same day, Hussein states "Excellent - I will call soon but some wording change on pre-approval rights and need change on Abdul & Steve compensation section - very excellent - we could also add a bonus that Abdul & Steve can begin to work sooner to source platforms." Again, Hussein recognized that Ham was entitled to equal compensation under the Partnership.

41.     On January 10, 2014 Hussein again compliments the Plaintiff, stating emphatically via text message: "Good nite and heroic job." Later, on January 20, 2014 Hussein again compliments Plaintiff, stating: "good call , complex but good brain work."

42.     On February 5, 2014, Hussein again notes his belief that he and Ham are operating within a partnership, stating via text message that "I will mention that we were looking at at least a 1 million Dollar valuation for partnership by and with regards to [redacted] coming in for the expense monetizes and strictly just on healthcare side."

43.     In April of 2014, Hussein notified Plaintiff that he was unwilling to commute to meet with Plaintiff, and began avoiding phone calls, text messages and emails from Plaintiff.

44.     Plaintiff, concerned about the possible loss of overall value in the partnership, implored Hussein to hold up his end of the partnership and perform his portion of the work. The parties were able to resolve their differences for a short time.

45.     Shortly thereafter, Hussein, who maintained control over the email and domain name of the partnership, "locked" Plaintiff out of his email account on or about June 11, 2014. Stated differently, Hussein prevented Ham from accessing the communications in his email account.

Hussein also ceased all communication with Plaintiff. Hussein, however, allowed himself to access the electronic communications stored in the account.

46.     Ham's email account was an integral tool in his work on behalf of the partnership. Among other things, the email account contained numerous emails and attachments, including numerous trade secrets, technical language important to the business interests and other materials that had been created or sent for the benefit of the partnership.

47.     Ham's email account, steve@rainmakercompany.com, was password-protected and many of the communications and attachments were marked confidential or otherwise protected from public view. Moreover, Ham's email account was hosted on a password-protected server computer.

48.     Despite locking Plaintiff out of his email account, Hussein is actively communicating with the partnership's clients, undertaking negotiations and enjoying the fruits of Ham's labor without any compensation to Plaintiff. For example, on Monday, June 16, 2014, Hussein sent a "Cooperation Agreement" document to a client contact that Ham had drafted, removing Ham's name on the document and replacing Ham's name with his own.

49.     Despite Hussein's aggressive actions, Plaintiff made numerous efforts to contact Hussein to resolve the matter. When Hussein did not respond, Plaintiff contacted undersigned counsel.

50.     Undersigned sent notice of the possibility of the present lawsuit to Hussein, personally, and the registered agent for RTI. Again, Defendants did not respond. Given no other recourse, this action follows.

## CAUSES OF ACTION

Plaintiff seeks redress as a result of Defendants' actions, as follows:

### Count One: Unjust Enrichment

51.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

52.     In the District of Columbia, unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.[7]

53.     Plaintiff Ham invested money and countless hours of his time in meetings, drafting documents, business planning, and other work for the benefit of the Defendants.

54.     Defendants retained all benefits of Plaintiff's work, including work product produced by Plaintiff and trade secrets employed for the benefit of the business. Moreover, Defendants continue to attempt to employ Plaintiff's work product to create profits, which are being held unlawfully by Defendants.

55.     Given that Ham's money, time, efforts, intellectual property, work product and business connections have been and are currently being employed without compensation, Defendants' retention of the benefit is unjust.

56.     Wherefore, Plaintiff seeks damages and injunctive relief.

### Count Two: Quantum Meruit

57.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

58.     In the District of Columbia, a party asserting a quantum meruit[8] claim must demonstrate that the parties' conduct implied the existence of a contractual relationship by

---

[7] News World Communs., Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005)
[8] The District of Columbia recognizes separate quantum meruit and unjust enrichment causes of action. See e.g. United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co., 81 F.3d 240, 246-47, 317 U.S. App. D.C. 145 (D.C. Cir. 1996).

establishing: (1) valuable services rendered by the plaintiff, (2) for the person for whom recovery is sought; (3) which services were accepted and enjoyed by that person, and (4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid.[9]

59.     In the present matter, Plaintiff Ham provided countless hours of time and substantial expertise for the benefit of the Defendants.

60.     Defendants Hussein and RTI were the beneficiaries of Plaintiff's valuable services.

61.     Hussein and RTI have enjoyed, and continue to enjoy, the fruits of Plaintiff's labor and expertise, because they relied upon Plaintiff's work product in the operation of the business.

62.     Defendants were reasonably notified of Plaintiff's expectation of payment. Among other things, Plaintiff referred to Hussein as partner several times, without Hussein's objection. Plaintiff was listed as "Managing Partner" on documents submitted to third parties, to which Hussein did not object. In many proposals, Plaintiff was named as an individual that would be entitled to equity, along with Hussein. Finally, Plaintiff communicated to Plaintiff, on numerous occasions, his expectation that his work would be compensated.

63.     Wherefore, Plaintiff seeks damages and injunctive relief.

**Count Three: Breach of Implied Contract**

64.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

65.     In the District of Columbia, to establish the existence of an implied contract, a plaintiff must show four elements: (1) valuable services being rendered; (2) for the person sought to be charged; (3) which services were accepted by the person sought to be charged . . . ; (4)

---

[9] Plesha v. Ferguson, 725 F. Supp. 2d 106, 111 (D.D.C. 2010)

under such circumstances as reasonably notified the person sought to be charged that [the person rendering the services] expected to be paid by him or her.[10]

66.     In the present matter, Plaintiff provided valuable services to Defendants by investing his money, time and providing expertise for the benefit of Defendants.

67.     Defendants were, and continue to be, beneficiaries of the valuable services.

68.     Defendants fully utilized the services provided by Plaintiff, demonstrated by numerous communications between the parties, documents exchanged, and other proof of acceptance.

69.     Defendants were reasonably notified of Plaintiff's expectation of payment. Among other things, Plaintiff referred to Hussein as partner several times, without Hussein's objection. Plaintiff was listed as "Managing Partner" on documents submitted to third parties, to which Hussein did not object. In many proposals, Plaintiff was named as an individual that would be entitled to equity, along with Hussein. Finally, Plaintiff communicated to Plaintiff, on numerous occasions, his expectation that his work would be compensated.

70.     Wherefore, Plaintiff seeks damages and injunctive relief.

**Count Four: Intentional Interference with Prospective Advantage**

71.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

72.     In the District of Columbia, this tort has four elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage.[11]

---

[10] <u>Vereen v. Clayborne</u>, 623 A.2d 1190, 1193 (D.C. 1993)
[11] <u>Browning v. Clinton</u>, 352 U.S. App. D.C. 4, 292 F.3d 235, 242 (2002)

73.     In the present matter, there was an existing business relationship between Plaintiff, Hussein and RTI. The parties were all working together for the common goal of the profitability of the business. Moreover, Plaintiff expected payment for the work undertaken in the Partnership.

74.     Hussein was in constant communication with Ham over a period of more than sixteen months and knew that Ham had an expectation of compensation for his investment of time, money and applicable expertise.

75.     In June of 2014, Hussein locked Ham out of the company email account, ceased communication with Plaintiff and continued to operate the business without compensating Ham.

76.     Ham has been damaged by Hussein's actions. First, Hussein is employing work product owned and provided by Ham without having compensated Ham for the same. Second, Ham is damaged because his reasonable expectation of payment has not come to fruition, and, on information and belief, Hussein will not pay any future revenues obtained as a result of Ham's valuable services.

77.     Wherefore, Plaintiff seeks damages and injunctive relief.

### Count Five: Common Law Fraud

78.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

79.     In the District of Columbia, the essential elements of common law fraud are: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation."[12]

---

[12] See Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1074 n.22 (D.C. 2008) (citation omitted).

80.     Moreover, District of Columbia courts recognize that "a false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen."[13]

81.     In the present matter, Defendant Hussein made numerous false representations. First, Hussein represented to Plaintiff that the undertaking between the parties was a business partnership. Second, Hussein represented that Plaintiff would be entitled to 50% of the stock in RTI. On information and belief, Hussein made other statements in a similar vein, currently contained in emails that are unavailable to Plaintiff, which will be set forth in a forthcoming Amended Complaint.

82.     In the alternative, Hussein failed to disclose a material fact when he remained silent as to his intentions upon Plaintiff's referring to Hussein as "partner," Plaintiff's operating under the title of "Managing Partner" and Plaintiff's numerous statements reflecting his belief that he was operating in a partnership.

83.     Hussein's statements were in reference to a material fact, namely, Plaintiff's compensation and financial expectations for his substantial investment of time and expertise.

84.     Hussein knew that he was not going to compensate Ham for his time, and had knowledge that his statements were false. Alternatively, Hussein failed to disclose the material fact that he had no intention of allowing Ham to be compensated for his time.

85.     Hussein made the statements with an intent to deceive Ham, so that Ham would continue to work on the business as long as possible. Alternatively, Hussein did not disclose the fact that he had no intention of paying Ham because he knew that Ham would no longer work on the project if Ham had no reasonable expectation of compensation.

---

[13] See Rothenberg v. Aero Mayflower Transit Co., Inc., 495 F. Supp. 399 (D.D.C. 1980).

86.     Ham relied on Hussein's statements or failures to disclose a material fact. Ham continued to work with Defendants for a period of over sixteen months with a reasonable expectation of payment based on Hussein's false statements or failure to disclose material facts.

87.     Wherefore, Plaintiff seeks damages and injunctive relief.

### Count Six: Negligent Misrepresentation

88.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

89.     To prove negligent misrepresentation, a plaintiff must show "(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to his detriment."[14]

90.     In the present matter, Defendant Hussein made numerous false representations. First, Hussein represented to Plaintiff that the undertaking between the parties was a business partnership. Second, Hussein represented that Plaintiff would be entitled to 50% of the stock in RTI. On information and belief, Hussein made other statements in a similar vein, currently contained in emails that are unavailable to Plaintiff, which will be set forth in a forthcoming Amended Complaint.

91.     Hussein's statements were in reference to a material fact, namely, Plaintiff's compensation and financial expectations for his substantial investment of time and expertise.

92.     Ham relied on Hussein's statements or failures to disclose. Ham continued to work with Defendants for a period of over sixteen months with a reasonable expectation of payment based on Hussein's false statements or failure to disclose material facts. However, Plaintiff has received no compensation for his time or effort, to his detriment.

---

[14] See Kumar v. D.C. Water & Sewer Auth., 25 A.3d 9, 15 n 10 (D.C. 2011)

93.     Wherefore, Plaintiff seeks damages and injunctive relief.

## Count Seven: Fraudulent Misrepresentation

94.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

95.     In order to prove fraudulent misrepresentation in the District of Columbia, a plaintiff may show "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages."[15]

96.     In the present matter, Hussein made a false representation of a material fact, namely that Ham would be paid for his time and expertise. Alternatively, Defendant omitted the material fact.

97.     Hussein knew that he was not going to compensate Ham and Hussein made the statements with knowledge of their falsity.

98.     Ham relied on Hussein's statements or failures to disclose. Ham continued to work with Defendants for a period of over sixteen months with a reasonable expectation of payment based on Hussein's false statements or failure to disclose material facts.

99.     Ham suffered damages, and is able to demonstrate the reasonable compensation he should have reasonably received given the time invested and work product produced.

100.     Wherefore, Plaintiff seeks damages and injunctive relief.

## Count Eight: Violation of D.C. Code § 36-401 et seq. ("Trade Secrets Act")

101.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

102.     In the District of Columbia, the three elements required to make out a claim for trade secret misappropriation are: (1) existence of a trade secret; (2) acquisition of the trade secret as a

---

[15] See Kumar, 25 A.3d 15 n 9 (D.C. 2011).

result of a confidential relationship; and (3) unauthorized use [or disclosure] of the secret, resulting in loss or damages.[16]

103.    In the present matter, Plaintiff Ham proffered trade secrets, for the benefit of the partnership, that were recorded in various documents and communications. The trade secrets included in the documents were financial models, business models and other technical documents that were not known to the public, were proprietary to Plaintiff, and were handled consistent with efforts to maintain confidentiality of the trade secrets recorded in the documents.

104.    Defendants acquired access to Plaintiff's trade secrets by engaging in a partnership relationship, and each member of the partnership was subject to fiduciary duties, including a duty of confidentiality regarding the partnerships intellectual property, trade secrets and other affairs. The duties applicable in this matter, included, but were not limited to a fiduciary duty of care and a fiduciary duty of loyalty.

105.    Alternatively, Defendants acquired access to Ham's trade secrets via their fraudulent statements, insisting that there was a partnership among the parties, when Hussein had no true intent to form a partnership.

106.    Hussein, who maintained control over the email and domain name of the company, locked Plaintiff out of his email account on or about June 11, 2014. Hussein also ceased all communication with Plaintiff. Hussein is now actively communicating with clients, undertaking negotiations for business contracts and enjoying the fruits of Ham's labor without any compensation to Plaintiff.

107.    For example, on Monday, June 16, 2014, Hussein sent a "Cooperation Agreement" document to a client contact that Ham had drafted, removing Ham's name on the document and

---

[16] See Catalyst & Chem. Servs. v. Global Ground Support, 350 F. Supp. 2d 1, 7 (D.D.C. 2004)

replacing Ham's name with his own. The "Cooperation Agreement" was a document produced

or provided by Ham for the benefit of the partnership. Hussein's unauthorized use of the secret,

outside of the partnership, and for his own personal use, resulted in loss and damages for the

Plaintiff.

108.    In addition to the "Cooperation Agreement," on information and belief, Defendants

are undertaking to use Plaintiff's other trade secrets for their own affairs, without any

compensation to Plaintiff.

109.    Wherefore, Plaintiff seeks damages and injunctive relief.

**Count Nine: Violation of 18 U.S.C § 1030 – Computer Fraud and Abuse Act (CFAA)**

110.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

111.    18 U.S.C. § 1030(g) provides that "any person who suffers damage or loss by reason

of a violation of this section may maintain a civil action against the violator to obtain

compensatory damages and injunctive relief or other equitable relief . . . if the conduct involves 1

of the factors set forth in subclauses [subclause] (I), (II), (III), (IV), or (V) of subsection

(c)(4)(A)(i)."

112.    18 U.S.C. § 1030(e)(11) defines the term "loss" to mean "any reasonable cost to any

victim, including the cost of responding to an offense, conducting a damage assessment, and

restoring the data, program, system, or information to its condition prior to the offense, and any

revenue lost, cost incurred, or other consequential damages incurred because of interruption of

service."

113.    In the present matter, Defendant Hussein "intentionally accessed a computer" and

exceed[ed] authorized access," thereby obtaining information, namely trade secrets owned by

Ham, from the password-protected email account steve@rainmakercompany.com, which was hosted on a password protected server computer. 18 U.S.C. §1030(a)(2)(c).

114.    Moreover, Hussein's unauthorized access furthered his fraud and allowed him to obtain something of value, namely the trade secrets created and owned by Ham. 18 U.S.C. §1030(a)(4).

115.    Hussein's actions created a "loss to 1 or more persons during any 1-year period . . . aggregating at least $ 5,000 in value." 18 U.S.C. §1030(c)(4)(A)(i)(1).

116.    Plaintiff Ham incurred substantial costs in responding to Hussein's offense. Among other things, Ham has incurred attorney's fees, court filing fees, service costs, and numerous other costs in excess of $5,000 in combating Hussein's excessive authorization.

117.    Defendant Hussein is liable under 18 U.S.C. § 1030(a)(4) because he "knowingly and with intent to defraud, accesse[d] a protected computer" and exceeded authorized access by accessing documents containing trade secrets, which were authored by Ham. Hussein copied and modified the documents, and subsequently used Ham's trade secrets for his own purposes by continuing to operate RTI without Ham's involvement.

118.    Moreover, "by means of such conduct," Hussein furthered the intended fraud and obtained something of value, namely the trade secrets in the documents, which were employed outside the previous partnership between the parties. On information and belief, the value of the Defendants' use exceeded $5,000 in any 1-year period.

119.    Wherefore, Plaintiff seeks damages and injunctive relief, including statutory damages and attorneys' fees.

**Count Ten: Violation of 18 U.S.C. § 2701 – Stored Communications Protection Act**

120.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

121.    18 U.S.C. § 2701 provides that it is unlawful for a person to (1) intentionally access without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceed an authorization to access that facility; and thereby obtaining, altering, or preventing authorized access to a wire or electronic communication while it is in electronic storage in such system.

122.    In the present matter, Defendant Hussein exceeded his authority by accessing Ham's password protected email account, steve@rainmakercompany.com, which was hosted on a facility through which an electronic communication service is provided, namely, the web server that was hosting the email services for the domain name "rainmakercompany.com."

123.    In exceeding his authorization, Hussein obtained emails, attachments, and other electronic communications that were being stored in the steve@rainmakercompany.com email account.

124.    In addition, in exceeding his authorization, Hussein prevented authorized access to a wire or electronic communication, because Hussein "locked" Ham out of Ham's email account. On information and belief, Hussein changed the password on the email account, removed the electronic communications from the email server or otherwise modified the email account in such a way that Ham was prevented from accessing the steve@rainmakercompany.com email account.

125.    Wherefore, Plaintiff seeks damages and injunctive relief, including statutory damages and attorney's fees, pursuant to 18 U.S.C. § 2707.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks the following relief:

1.      An award for damages, in an amount not less than $100,000, in an amount to be proven at trial;

2.      An award of all economic, statutory, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct, and if their conduct is proven willful, award Plaintiff exemplary damages;

3.      Disgorgement or restitution by Defendants of all revenue earned from the fraudulent and unlawful practices described herein;

4.      An award of punitive damages, in an amount to be proven at trial;

5.      An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, including an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

6.      An award to Plaintiff of reasonable litigation expenses and attorneys' fees;

7.      An award to Plaintiff of pre-judgment and post-judgment interest, to the extent allowable; and

8.      Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,                                         Dated: October 17, 2014

_____
Eric J. Menhart (Bar ID: 975896)
Lexero Law
420 C St NE
Washington, D.C. 20002
Phone: 855-453-9376
Fax: 855-453-9376

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed via ECF and all parties of record were automatically notified via that system.

_____
Eric J. Menhart